# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| WILLIAM E. HANKINSON, D.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-03205 |
| | ) | |
| NORTHWESTERN MUTUAL LIFE | ) | |
| INSURANCE COMPANY, R. ADAM | ) | |
| SPRINGER, and JAMES SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

This matter is before the Court on the Motions to Dismiss filed by Defendants James Smith (d/e 12), Northwestern Mutual Life Insurance Company (Northwestern) (d/e 14), and Adam Springer (d/e 22). For the reasons that follow, both Smith's and Springer's Motions to Dismiss are GRANTED in their entirety. Northwestern's Motion is GRANTED IN PART and DENIED IN PART. Northwestern's Motion is GRANTED in all respects with the exception of Count II of the Complaint. Count II survives.

# I. <u>BACKGROUND</u>

Plaintiff William Hankinson (Plaintiff) filed a Complaint (d/e 1-3) in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois against Defendants Northwestern Mutual Life Insurance Company (Northwestern), R. Adam Springer, and James Smith. Northwestern, with Springer's and Smith's consent, filed a Notice of Removal (d/e 1) to this Court.

## A.     Events Occurring Prior to October 20, 2004

The Complaint alleges that in 2003, Plaintiff owned 50% of the Springfield Accident & Pain Center, Ltd. (Springfield Center), a chiropractic clinic. John D. Warrington, D.C., owned the other 50%. Between February 2004 and March 2005, Northwestern employed Springer and Smith as agents. Springer and Smith provided Plaintiff and Dr. Warrington with information about a group disability insurance policy. In March 2004, the agents solicited the purchase of a group disability insurance policy–Northwestern Group Policy L670599 (the

Policy).  The Parties do not dispute that the Policy is an ERISA qualified benefit plan.

In August 2004, Plaintiff and Dr. Warrington decided that Dr. Warrington would buy all of Plaintiff's interest in Springfield Center and Plaintiff would open his own chiropractic clinic.  Plaintiff and Dr. Warrington met with Springer.  Both expressed to Springer that they wanted to make sure that the disability coverage would continue for both Plaintiff and Dr. Warrington.  Plaintiff and Dr. Warrington provided Springer all of the facts, terms, documents, and circumstances attendant to the proposed purchase/sale, including that Plaintiff intended to continue practicing as a chiropractor at his own clinic.

Springer reviewed the Northwestern insurance policies held by Springfield Center, including the Policy, in order to counsel and advise Plaintiff and Dr. Warrington about how to maintain or reestablish ongoing disability coverage.  Springer also contacted Smith at Northwestern's home office during the review process.  Springer described the proposed purchase/sale of Springfield Center to Smith.

Additionally, Springer told Smith that Plaintiff intended to open his own chiropractic clinic.

Smith responded with information on how to continue/reestablish the current Springfield Center Long Term Disability (LTD) Policy.  He told Springer to advise Plaintiff and Dr. Warrington that Plaintiff need only submit a "change of address" form and continue paying premiums.

B.   Events Occurring On and After October 20, 2004

On October 20, 2004, Plaintiff and Dr. Warrington consummated the purchase/sale agreement.  Plaintiff subsequently met with Springer at Plaintiff's new solely-operated chiropractic clinic.  Springer again represented to Plaintiff that the Policy continued to cover Plaintiff for disability insurance.

Northwestern sent premium invoices to Springfield Center from 2004 to 2010 that listed Plaintiff as an insured under the Policy. Plaintiff and Dr. Warrington shared the costs of the premium payments made pursuant to those premium invoices.  Northwestern made no inquiries and performed no reviews–beyond the guidance offered by

Springer and Smith–of the Policy or of the post purchase/sale status of

Plaintiff between 2004 and 2010.

Following the purchase/sale transaction between Plaintiff and Dr.

Warrington, Plaintiff continued practicing as a chiropractor, working 30

or more hours per week at his new practice.  Plaintiff and Dr. Warrington

maintained an exclusive business relationship whereby they shared

patients when necessary.

## C.    Policy Administration and Procedural History

In December 2010, Plaintiff became permanently disabled and

unable to work.  Plaintiff submitted a claim under the Policy to

Northwestern.  In January 2011, Northwestern denied Plaintiff's claim

because Plaintiff was not a "Member" under the Policy, regularly working

30 or more hours a week for Springfield Center.  In February and March

2011, Plaintiff's counsel requested that Northwestern review the denial.

In May 2011, Northwestern again denied Plaintiff disability coverage.

In June 2011, Plaintiff filed a nine-count complaint in state court

which has since been removed to this Court.  Plaintiff brings Counts I

(29 U.S.C. § 1132(a)(1)(B)), II (Estoppel), V (Fraud), VI (Negligent Misrepresentation), VII (Illinois Consumer Fraud and Deceptive Business Practices), VIII (Breach of Contract), and IX (215 ILCS 5/155) against Northwestern.  Plaintiff brings Counts III and VI ( both Negligent Misrepresentation) against Springer.  Finally, Plaintiff brings Count IV (Negligent Misrepresentation) against Smith.

## D.    Pertinent Policy Language

The Policy contains several provisions relevant to Plaintiff's claims. First, the Policy defines a Member as a person who: (1) is an active sole proprietor, partner, or employee of the Employer; (2) a citizen or resident of the United States or Canada; and (3) is regularly working 30 or more hours per week for the Employer.

The Policy also contains a provision that states "[w]hen your insurance under the Summary of Insurance Benefits ends you may have the right to purchase group [Long-term Disability or LTD] conversion insurance."  The Policy goes on to list several occurrences that automatically end the insurance.  The first is "[t]he date your

employment terminates."  The second is "[t]he date you cease to be a
Member."

The Policy then sets forth when conversion may occur under the
Policy.  The right to convert exists if: (1) the insurance ends because
employment ends for any reason other than retirement, and (2) the
Member: (a) has been insured under the Employer's LTD insurance
program for at least one year on the date insurance ends, (b) is not
disabled on the date insurance ends, (c) is a citizen of the United States
or Canada, and (d) is not eligible for insurance under any employer's
LTD insurance program.  Further, the Member must complete
Northwestern's application form in writing, pay the first premium to
Northwestern's Group Insurance Administration Office within the first
31 days after insurance ends, and select an available benefit amount.
The Policy states that "[t]he payment of each premium by the
Policyowner as it becomes due will maintain the Policy in force until the
next Premium Due Date."

Finally, the Policy states that no change in the Policy will be valid unless it is approved in writing by one of Northwestern's executives and given to the Policyowner to attach to the policy.  Likewise, no change in the Summary of Insurance Benefits will be valid unless it is approved in writing by one of Northwestern's executives and given to the Employer. Lastly, no agent may change the Policy or Summary of Insurance Benefits, or waive any Policy provision.

All three Defendants filed Motions to Dismiss pursuant to Fed.R.Civ.P.12(b)(6).  The Motions are fully briefed.

## II. <u>JURISDICTION AND VENUE</u>

The federal questions alleged in Plaintiff's Count I, pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1132(a)(1)(B)), give this Court subject-matter jurisdiction.  <u>See</u> 28 U.S.C. § 1331.  Personal jurisdiction and venue requirements are satisfied because the relevant acts occurred in this judicial district.  <u>See</u> <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (finding that personal jurisdiction exists where a

defendant "purposefully avail[ed himself or herself] of the privilege of conducting activities" in the forum state); <u>see</u> 28 U.S.C. § 1391(b) (stating that venue in non-diversity cases is proper in a judicial district where any defendant resides, if all defendants reside in the same State). The Court has supplemental jurisdiction over the remaining state law claims.  <u>See</u> 28 U.S.C. § 1367(a).

## III.  <u>LEGAL STANDARD</u>

A court will not address the merits of a case when determining whether to dismiss a complaint for failure to state a claim.  <u>See</u> Fed.R.Civ.P. 12(b)(6).  Instead, a motion to dismiss focuses a court's attention solely on the sufficiency of the complaint.  <u>Gibson v. City of Chi.</u>, 910 F.2d 1510, 1520 (7th Cir. 1990).  Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  In <u>Bell Atlantic Corp. v. Twombly</u>, the Supreme Court interpreted Rule 8(a)(2) to impose two "easy-to-clear hurdles." <u>E.E.O.C. v. Concentra Health Services, Inc.</u>, 496 F.3d 773, 776-77 (7th

Cir. 2007) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007)).  "First, the complaint must describe the claim in sufficient detail

to give the defendant 'fair notice of what the . . . claim is and the grounds

upon which it rests.'  Second, its allegations must plausibly suggest that

the plaintiff has a right to relief, raising that possibility above a

'speculative level'; if they do not, the plaintiff pleads itself out of court."

<u>Id.</u>  Finally, the Court accepts "as true all well-pleaded facts alleged in the

complaint and resolve[s] any factual disputes . . . in favor of the

plaintiff."  <u>Felland v. Clifton</u>, 682 F.3d 665, 672 (7th Cir. 2012) (citing

<u>Purdue Research Found. v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 782

(7th Cir. 2003)).

## VI. <u>ANALYSIS</u>

Northwestern filed a Motion to Dismiss Counts II and V-IX of the

Complaint.  <u>See</u> d/e 14.  Springer filed a Motion to Dismiss Counts III

and VI.  <u>See</u> d/e 22.  Smith filed a Motion to Dismiss Count IV.  <u>See</u> d/e

12.

First, the Court will address Northwestern's Motion to Dismiss for failure to state an ERISA Estoppel claim in Count II.  Second, the Court will address the Defendants' Motions to Dismiss on the grounds that ERISA preempts the state law claims in Counts III-IX.  The Court will next discuss Springer's and Smith's Motions to Dismiss Counts III and IV.  The Court will then address Northwestern's Motion to Dismiss Counts V-VIII and Springer's Motion to Dismiss Count VI.  Finally, the Court will address Northwestern's Motion to Dismiss Plaintiff's claim in Count IX for an alleged violation of § 155 of the Illinois Insurance Code (215 ILCS 5/155).

### A.   Plaintiff States a Claim Against Northwestern for ERISA Estoppel Relief in Count II

Written plan documents generally govern ERISA plan administration.  Pearson v. Voith Paper Rolls, Inc., 656 F.3d 504, 509 (7th Cir. 2011) (citing Kannapien v. Quaker Oats Co., 507 F.3d 629, 636 (7th Cir. 2007)).  But "[s]tatements or conduct by individuals implementing the plan may estop" enforcement of [the] written language.  That, however, only occurs under "extreme circumstances."  Pearson, 656

F.3d at 509  (citing <u>Kannapien</u>, 507 F.3d at 636; <u>Vallone v. CNA Fin.</u> <u>Corp.</u>, 375 F.3d 623, 639 (7th Cir. 2004); <u>Sandstrom v. Cultor Food</u> <u>Science, Inc.</u>, 214 F.3d 795, 797 (7th Cir. 2000)).  "A plaintiff demonstrating extreme circumstances must establish (1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that misrepresentation by the plaintiff; and (4) that the reliance was to the plaintiff's detriment."  <u>Pearson</u>, 656 F.3d at 509 (citing <u>Kannapien</u>, 507 F.3d at 636; <u>Vallone</u>, 375 F.3d at 639; <u>Coker v. Trans World Airlines,</u> <u>Inc.</u>, 165 F.3d 579, 585 (7th Cir. 1999)).  "Innocent errors" and "negligent misrepresentations" do not provide plaintiffs with a basis for ERISA estoppel relief.  <u>Coker</u>, 165 F.3d at 586 (citing <u>Decatur Mem'l</u> <u>Hosp. v. Connecticut Gen. Life Ins. Co.</u>, 990 F.2d 925, 926-27 (7th Cir. 1993); <u>Vershaw v. Northwestern Nat'l Life Ins. Co.</u>, 979 F.2d 557, 559 (7th Cir. 1992)).

Plaintiff adequately alleges facts demonstrating that he reasonably relied to his detriment on knowing misrepresentations made in writing by Northwestern.  First, Plaintiff alleges that Northwestern knowingly sent

invoices naming Plaintiff as an insured to Springfield Center from

October 20, 2004 to 2010.  Northwestern sent these invoices despite the

fact that Plaintiff notified Northwestern–using a change of address

form–and two of its agents that he had or would sell his interest in

Springfield Center.

Plaintiff also alleges that he met with Springer after the sale.  There,

Springer represented that the LTD Policy continued to cover Plaintiff

even after he started his own practice.  Plaintiff alleges that the incorrect

invoices and representations from Springer caused him to make premium

payments from 2004 until 2010.

Northwestern rightly argues that negligently sending incorrect

invoices does not establish an ERISA estoppel claim.  See Coker, 165

F.3d at 586.  But Plaintiff's allegations transcend mere negligence.

According to Plaintiff's Complaint, Northwestern knew about Plaintiff's

employment circumstances.  Northwestern also knew the terms of the

Policy.  Despite this knowledge, Northwestern continued to name

Plaintiff as an insured in written invoices and accepted Plaintiff's

premium payments for years.

Second, the Complaint alleges that Plaintiff reasonably relied on

the written misrepresentations.  Northwestern relies on Coker as support

for the argument that Plaintiff has not sufficiently alleged reasonable

reliance.  However, Coker is distinguishable from the case sub judice.

In Coker, the Seventh Circuit addressed an appeal from a grant of

summary judgment in the defendants' favor.  Coker, 165 F.3d at 581.

The legal standard at the summary judgment phase differs from the

standard the court applies to a motion to dismiss.  At the summary

judgment stage, a court determines whether the pleadings, depositions,

answers to interrogatories and admissions on file, together with any

affidavits show there is no genuine issue of material fact.  In ruling on a

motion to dismiss, the court must determine whether the allegations in

the complaint state a claim.

Additionally, the facts and circumstances in this case differ from

Coker.  In Coker, a wife pursued an ERISA estoppel claim for benefits

from her husband's former benefits plan.  Id. at 581-83.  Her husband

was furloughed by his employer on September 30, 1992.  Id. at 581.

That same day, the employer sent a memorandum to the husband and

wife explaining that under the relevant collective bargaining agreement,

the husband's employer was required to provide one year of further

medical coverage under the plan.  Id.  The memorandum also explained

that the husband and wife had the option of purchasing, at their own

expense, continued health coverage pursuant to the relevant version of

the Consolidated Omnibus Budget Reconciliation Act (COBRA) after the

one year expired.  Id.  The one year of coverage expired, and the husband

and wife failed to take any steps to exercise their COBRA option.  Id. at

581-82.  However, the employer, due to a "bureaucratic snafu,"

inadvertently continued carrying the husband as a covered employee and

the wife as a dependent.  Id. at 582.

    The wife suffered from diabetes and was admitted to the hospital

on several occasions in early 1995.  Id.  Prior to each hospitalization, the

couple sought pre-admission certification from the third-party

administrator of the employer's group plan.  Id.  Each time, the wife's
admission was approved with the following caveat:

> Certification is based upon the medical information provided.
> This notice is not a guarantee of benefits.  Payment of
> benefits is subject to any subsequent review(s) of medical
> information or records, the patient's eligibility on the date the
> service is rendered, and any other contractual provisions of
> the plan.

Id.  The employer refused to cover any medical bills that were incurred
after April 1994, when the couple's COBRA eligibility expired, and
notified the couple they were no longer covered by the plan.  Id.  The
wife filed suit and alleged estoppel in count I.  Id. at 583.  She argued
that she detrimentally relied on her husband's former employer's written
mailings that led her to believe she still had medical coverage.  Id. at 586.
The Seventh Circuit found her reliance unreasonable and stated the
following:

> While the Cokers had no reason to question the medical cards
> they received for the first 12 months-or even the first 18
> months if one charitably assumes that Susan reasonably
> thought COBRA benefits were free-it defies common sense to
> think that a company for which one was not presently
> working, that was not paying a current wage or salary, and
> that had (as of then) made no promise of reinstatement,

would continue indefinitely to afford health coverage for the spouse of a former employee.

Id.

Here, Plaintiff's allegations allow a plausible inference that he reasonably relied on written and oral misrepresentations.  For instance, Plaintiff sold his half of a chiropractic practice to start his own clinic.  He did so only after conferring with Northwestern's agents in August 2004. The agents assured Plaintiff that he need only submit an address change form to convert the disability insurance coverage to his new practice.  He submitted that form and continued to pay premiums from October 20, 2004 thru 2010.  Agent Springer assured Plaintiff after the sale of his interest in Springfield Center that Plaintiff's coverage remained intact. The Springfield Center also continued to receive invoices that indicated Plaintiff remained an insured under the Policy, and Plaintiff continued to pay the premiums.

Finally, Plaintiff adequately alleges that he suffered a detriment. Plaintiff alleges that he did not purchase new coverage because of the written and oral misrepresentations made to him after October 20, 2004.

Plaintiff also alleges that he continued to pay premiums based on those written invoices and oral representations.  Further, Plaintiff suggests that, had he known about his failure to satisfy the requirements to convert the coverage, he would have foregone selling his interest in the chiropractic practice until such time that the Policy would convert.

Plaintiff's allegations do not represent "speculative" detrimental reliance.  Rather, at a minimum, Plaintiff endured "economic harm" when he paid premiums based on Northwestern's misrepresentations. See Pearson, 656 F.3d at 508.

For the reasons stated, Plaintiff adequately alleges facts that plausibly state a claim for ERISA estoppel relief.

**B.  The Court Finds that ERISA Preempts the Negligent Misrepresentation Claims Against Springer in Count III, Smith in Count IV, and the Other State Law Claims in Counts V, VI, VII, VIII, and IX.**

State common law causes of action may be preempted by ERISA in two ways.  First, state law claims may be completely displaced by the civil enforcement provisions of § 502(a) of ERISA (29 U.S.C. § 1332(a)).  The Supreme Court outlined the analysis for determining whether ERISA

completely preempts a state law claim in <u>Aetna Health Inc. v. Davila</u>:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B).

<u>Davila</u>, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (citation omitted).  Further, "[a]rtful pleading cannot disguise the true nature of the claims. . . . It does not matter that the remedies offered by ERISA are not as far-reaching as those offered by state law.  The federal remedies reflect a congressional choice that [the court] must enforce." <u>Kaden v. First Commonwealth Ins. Co.</u>, 2005 WL 2656381, at *3 (N.D. Ill. Oct. 14, 2005).

Second, a state law claim may be superseded by ERISA § 514(a) (29 U.S.C. § 1144(a)).  A state law claim is preempted by § 514(a) insofar as it relates to a welfare benefit plan.  <u>See Egelhoff v. Egelhoff</u>,

532 U.S. 141, 146-47 (2001) (citing Shaw v. Delta Air Lines, Inc., 463

U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("We have held

that a state law relates to an ERISA plan 'if it has a connection with or

reference to such a plan.'")); Stein v. Unum Provident Ins. Co. of Am.,

2005 WL 2338819, at *3-4 (N.D. Ill. Sept. 22, 2005) (finding state law

negligent misrepresentation claim preempted where "the Court will need

to interpret the plan in order to determine [Plaintiff's] entitlement to

benefits.").  State law claims that fall within the scope of § 502, § 514, or

both, must be dismissed because they are preempted by ERISA.

   Plaintiff suggests that he carefully drafted the Complaint to avoid

ERISA's preemptive effect.  He asks the Court to "[n]ote . . . that Counts

III and IV . . . name only the agents who actually made the

misrepresentations, and do not seek to impose vicarious liability on the

ERISA plan or administrator."  Pl.'s Response Opp'n to Northwestern's

Mot. to Dismiss at 2.  Further, Plaintiff contends that "if Northwestern is

correct that Plaintiff ceased to be an Insured Member upon

consummation of the aforesaid purchase sale [on October 20, 2004],

then Plaintiff had no mechanism . . . for administrative review of [the state law claims] for tortious conduct" in Counts V-IX.  Pl.'s Response Opp'n to Northwestern's Mot. to Dismiss at 2.  Rather, "Plaintiff and Northwestern stood in the same relationship as between any prospective purchaser of insurance and ordinary insurance company, and not as a beneficiary under an ERISA plan."  Pl.'s Response Opp'n to Northwestern's Mot. to Dismiss at 2.

The Motions to Dismiss the state law claims in Counts III-IX will be addressed in the order the claims are set forth in the Complaint.  First, the Court will address the claims in Counts III and IV that arose out of the alleged misrepresentations that occurred prior to October 20, 2004.  Here, Plaintiff argues that the state law claims avoid preemption because he seeks to hold the agents liable—not the Policy.  Second, the Court will address the state law claims in Counts V-VIII that arose out of the alleged misconduct that occurred after October 20, 2004.  Plaintiff argues that these state law claims avoid preemption because the misconduct occurred after Plaintiff ceased to be a beneficiary under the Policy.

Finally, the Court will address whether ERISA preempts the claim in

Count IX that alleges a breach of § 155 of the Illinois Insurance Code.

    1.    **ERISA Preempts the Negligent Misrepresentation Claims Brought Against Northwestern Agents Springer (Count III) and Smith (Count IV) that Plaintiff Alleges Occurred Before Plaintiff Sold His Interest in Springfield Center**

ERISA preempts the state law claims in Counts III and IV.  First,

the conduct that forms the basis of Plaintiff's claim in Count I to recover

benefits under § 502(a)(1)(B) also forms the basis for Plaintiff's claims in

Counts III and IV.  Specifically, Plaintiff attempts in Counts III and IV

to hold Smith and Springer independently liable for their actions while

the Policy remained in effect.  See Davila, 542 U.S. at 210 ("[I]f an

individual, at some time, could have brought his claim under ERISA §

502(a)(1)(B), and where there is no other independent legal duty that is

implicated by a defendant's actions, then the individual's cause of action

is completely preempted.").  Counts III and IV merely restate what the

Plaintiff as a plan participant seeks in Count I—damages under ERISA

for the decisions made pursuant to administration of the Policy.

Therefore, § 502(a) completely preempts the claims in Counts III and IV

against Springer and Smith.

Second, § 514(a) preempts the claims in Counts III and IV because

those Counts also "relate" to the ERISA plan.  A suit brought for the

alleged misrepresentations in Counts III and IV requires the Court to

interpret the conversion and coverage provisions of the Policy.  This

creates the nexus necessary for § 514(a)'s preemptive effect.  See

Egelhoff, 532 U.S. at 146-47 (stating that § 514(a) preempts where the

state law claim relates to the ERISA plan); see also Stein, 2005 WL

2338819, at *3-4 (finding that state law claims relate to ERISA plans

where courts must interpret plan language to determine a plaintiff's right

to benefits).

The Court recognizes that ERISA does not completely preempt

state law claims that allege a breach of an independent duty not related

to an ERISA plan.  See Radke's Inc. v. Bastian, 2011 WL 817549, at *1

(C.D. Ill. Feb. 8, 2011).  For example, the plaintiffs in Radke's brought a

state law claim solely against the agent for misrepresentations made before the plaintiffs enrolled in the ERISA plan. Id. This Court stated that the "Plaintiffs' claims [against solely the insurance agent could not] fairly be characterized as claims for plan benefits. . . . They [did] not seek to hold the plan liable, either directly or vicariously, nor [did] they try[] to modify the terms of the plan (which they could not do anyways based on oral misrepresentations)." Id. at *5 (citing Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 856 (7th Cir. 1997) ("ERISA does not permit the oral modification of substantive provisions of a written ERISA plan. In other words, if the written terms of an ERISA plan do not entitle the claimant to the coverage sought, benefits will not be forthcoming on the basis of oral representations to the contrary.") (citations omitted)). Finally, the Court stated that "[t]he fact that the policies will be relevant evidence [of the damages amount requested] does not" result in complete preemption. Id.

The Court, however, finds a significant difference between the instant case and Radke's. In Radke's, the alleged misrepresentations

occurred before the plaintiffs enrolled in the plan.  Here, the

misrepresentations that form the basis for the claims in Counts III and

IV occurred in August 2004—after Plaintiff enrolled in the Policy.  This

means that Springer and Smith provided the information while the Policy

was in effect.  Oral misrepresentations regarding an ERISA policy do

nothing to change the written language of the policy.  See Plumb, 124

F.3d at 856 (addressing an estoppel claim and finding that (1) where

only oral misrepresentations are made that those statements do not

modify the substantive provisions of a written ERISA plan and (2) mere

silence when no duty to speak cannot form the basis of an estoppel

claim).

For the reasons stated, Plaintiff's state law claims in Counts III and

IV are preempted by ERISA.  Therefore, those claims are dismissed with

prejudice.

> 2.   ERISA Preempts the State Law Claims in Counts V, VI, VII, and VIII, Where the Violative Conduct Allegedly Occurred After Plaintiff Ceased to Have the Status of a Beneficiary Under the Policy

Counts V-VIII cannot be addressed without considering the Policy's

right to convert language.  Therefore, these claims relate to the ERISA

Policy and are preempted by § 514(a) of ERISA.  See Egelhoff, 532 U.S.

at 146-47 (state law relates to an ERISA plan if the claims have a

connection or reference to such a plan).

The Policy at issue contained language that included steps an

insured must undertake to convert coverage.  Plaintiff attempted to

convert the coverage, but Northwestern denied a subsequent claim

because Plaintiff allegedly failed to satisfy all of the conversion

requirements.  See White v. Provident Life & Acc. Ins. Co., 114 F.3d 26,

28 (4th Cir. 1997) ("The entire existence of a conversion policy rests on

the conversion right found in an ERISA plan."); Greany v. Western Farm

Bureau Life Ins. Co., 973 F.2d 812, 817 (9th Cir. 1992) ("[W]e conclude

that the individual conversion benefits are part of the ERISA plan and

are thus governed by ERISA."); Glass v. United of Omaha Life Ins. Co.,

33 F.3d 1341, 1347 (11th Cir. 1994) ("Clearly, [Plaintiff's] ability to

obtain the converted life insurance policy arose from the ERISA plan, and

the converted policy itself continued to be integrally linked with the

ERISA plan."); <u>Reber v. Provident Life & Acc. Ins. Co.</u>, 93 F. Supp. 2d 995, 1008 n.8 (S.D. Ind. 2000) (noting that the majority position is that policies derived from ERISA plans continue to be governed by ERISA even after conversion upon termination of employment).

This is significant because, but for the Plan's right to convert language, neither Northwestern, nor agent Springer, would face liability. Specifically, Springer represented to Plaintiff that his benefits continued in spite of the language in the ERISA Policy.  Subsequently, Northwestern denied Plaintiff's claim because Plaintiff allegedly failed to meet all of the requirements under the right to convert language.  The issues in Counts V-VIII inevitably refer back to the right to convert language that exists in the ERISA Policy.  <u>See</u> <u>Glass</u>, 33 F.3d at 1347. This creates a link between the ERISA Policy and the state law claims asserted against Northwestern in Counts V-VIII, and Springer in Count VI.

Plaintiff argues that ERISA does not completely preempt state law claims that implicate the breach of an independent legal duty.  <u>See</u>

Davila, 542 U.S. at 210.  For example, in Neuma v. AMP, Inc., the

Seventh Circuit found that ERISA did not completely preempt a state

law claim for negligent misrepresentation where: (1) the administrator

misrepresented the plan's value before the assignee bought rights to

benefits; and (2) the assignee could not utilize ERISA's civil enforcement

statute because the misrepresentations occurred before the assignee

became a beneficiary under the policy.  259 F.3d 864, 880-81 (7th Cir.

2001).

There are, however, two issues with Plaintiff's reliance on Neuma.

First, the defendants in Neuma never raised a § 514(a) conflict

preemption defense.  Neuma, 259 F.3d at 880-81.  Therefore, the court

in Neuma never discussed whether the claim related to the ERISA plan.

Second, as the Court stated, the misrepresentations in this case occurred

after Plaintiff purchased the Plan in March 2004 and subsequently

attempted to convert the Policy.  These facts created a nexus between

Plaintiff's claims in Counts V-VIII and the ERISA Policy at issue.

Therefore, § 514(a) preempts the state law claims alleged in Counts

V-VIII against Northwestern and Count VI alleged against Springer.

Those Counts are dismissed with prejudice.

### 3. ERISA Preempts Plaintiff's Claim in Count IX that Alleges Defendant Violated Section 155 of the Illinois Insurance Code–the vexatious and unreasonable failure to award benefits

Section 155 of the Illinois Insurance Code states, in part, as

follows:

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court, that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155(1).

The Court is not aware of any Seventh Circuit opinion that has addressed whether ERISA preempts 215 ILCS 5/155 of the Illinois Insurance Code.  See Price v. Minn. Life Ins. Co., 2008 WL 687131, at *4 (S.D. Ill. Mar. 10, 2008) (noting that "the Seventh Circuit Court of Appeals has not spoken to the issue").  There are, however, many district court cases that have addressed the issue and held that ERISA preempts vexatious refusal to pay claims filed under § 155 of the Insurance Code. See e.g., Doe v. United Healthcare of the Midwest, Inc., 2010 WL 747037, at *2-3 (S.D. Ill. Mar. 1, 2010) (finding that § 514(a) of ERISA preempts the claim brought pursuant to § 155 because the claim relates to the employee benefit plan); Langworthy v. Honeywell Life and Accident Ins. Plan, 2009 WL 3464131, at *3-4 (N.D. Ill. Oct. 22, 2009) (finding ERISA preempts § 155 because § 155 does not fall within the scope of ERISA's savings clause and because the remedies ERISA provides for claimants alleging improper processing of a claim under an employee benefit plan are meant to be exclusive); Price, 2008 WL

687131, at *4 (finding § 155 claim preempted by ERISA); <u>Gawrysh v.</u>

<u>CNA Ins. Cos.</u>, 978 F. Supp. 790, 792-94 (N.D. Ill. 1997) (finding § 155

claim preempted by ERISA and does not fall within ERISA's "savings

clause").  The Court agrees with the conclusions in these cases and

concludes that ERISA preempts Plaintiff's § 155 claim because it relates

to an ERISA plan and the § 155 claim does not fall within ERISA's

"savings clause."  Accordingly, Count IX is dismissed with prejudice

because it is preempted by ERISA.

## CONCLUSION

For the reasons stated, the Motions to Dismiss (d/e 11, 22) filed by

Defendants Smith and Springer are GRANTED.  Accordingly, Count IV

against Smith is Dismissed.  Likewise, Counts III and VI against Springer

are DISMISSED.  Further, Northwestern's Motion to Dismiss (d/e 14) is

GRANTED IN PART and DENIED IN PART.  Northwestern's Motion

to Dismiss is DENIED with respect to Count II.  Northwestern's Motion

to Dismiss is GRANTED as it relates to Counts V, VI, VII, VIII, and IX.

Counts V, VI, VII, VIII, and IX are DISMISSED.  This matter is referred

back to Judge Cudmore for further pre-trial proceedings.

IT IS SO ORDERED.

ENTERED: October 23, 2012

FOR THE COURT                             s/ Sue E. Myerscough
                                 _____
                                      SUE E. MYERSCOUGH
                                 UNITED STATE DISTRICT JUDGE